**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** | ) ) ) ) | |
| Plaintiff, | ) ) | **Civil Action No.** |
| | ) | **07 CV 2058** |
| v. | ) ) | **AFFIDAVIT OF SERVICE** |
| **SHANE BASHIR SUMAN and MONIE RAHMAN,** | ) ) ) | **UPON SHANE BASHIR SUMAN** |
| Defendants. | ) ) ) | |

I, Theodore Sorokopas, do hereby make oath and do solemnly swear:

1. That I am over the age of 21 and a non-party to this action;

2. That I am a private investigator employed by Integra Investigation Services whose business address is 240 Galaxy Blvd., Toronto, Ontario M9W 5R8 Canada;

3. That I am authorized to serve legal process in Canada;

4. That on or about July 27, 2007, I was instructed by my manager, Patti Terry, in turn instructed by Legal Language Services, an international litigation support firm located in Leawood, Kansas, in turn instructed by Dean Conway, plaintiff's counsel with the US Securities and Exchange Commission, to serve upon defendant Shane Bashir Suman the following documents:

   - Hague Service Convention *Notice*
   - Hague Service Convention *Summary of the Document to be Served* with Attachment A
   - *Summons in a Civil Case*
   - *Complaint*

5. That according to information provided by plaintiff's attorneys, Shane Bashir Suman resides at 93 William Honey Crescent, Markham, Ontario L3S DM2, Canada;

6. That on July 28, 2007 at 7:20 a.m. I did travel to 93 William Honey Crescent in Markham, where I found a basement apartment; that I asked the gentleman who answered the door there if he were Shane Bashir Suman; that he said, "yes"; that I handed the above-referenced documents to him, which he accepted, and told him, "You are being served with legal process;"

7. That Shane Bashir Suman is a male in his late 20's or early 30's, approximately 5'10" tall, of average build, with an olive complexion; that he was wearing a short sleeved brown knit jersey top and dark pants;

8. That I believe service to have been effected upon the defendant by a method prescribed by the internal laws of Ontario, Canada for civil matters within this jurisdiction and thus in accordance with Article 10(b) of the *Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters.*

I declare under penalty of perjury under the laws of the United States that the foregoing statements are true and accurate to the best of my knowledge and belief.

SWORN at Toronto, Ontario, Canada before me on this 2nd day of August 2007.

[Signature of Canadian notary]

Patricia Ann Manna, a Commissioner, etc.,
City of Toronto for Integra Investigation
Services Ltd.
for Process Serving Only.
Expires February 27, 2008.

[Seal of Canadian notary]

Theodore Sorokopas, Private Investigator

**NOTICE**
*(recommended by the Fourteenth Session of*
*Hague Conference of October, 1980)*

**identité et adresse du destinataire**
*identity and address of the addressee*

> Shane Bashir SUMAN, *an individual*
> 71 Four Valley Drive
> Concord, Ontario  L4K 4V8
> CANADA

**TRÈS IMPORTANT**

LE DOCUMENT CI-JOINT EST DE NATURE JURIDIQUE ET PEUT AFFECTER VOS DROITS ET OBLIGATIONS.  LES "ELÉMENTS ESSENTIELS DE L'ACTE" VOUS DONNENT QUELQUES INFORMATIONS SUR SA NATURE ET SON OBJET.  IL EST TOUTEFOIS INDISPENSABLE DE LIRE ATTENTIVEMENT LE TEXTE MÊME DU DOCUMENT.  IL PEUT ÊTRE NÉCESSAIRE DE DEMANDER UN AVIS JURIDIQUE.

SI VOS RESSOURCES SONT INSUFFISANTES, RENSEIGNEZ-VOUS SUR LA POSSIBILITÉ D'OBTENIR L'ASSISTANCE JUDICIAIRE ET LA CONSULTATION JURIDIQUE SOIT DANS VOTRE PAYS SOIT DANS LE PAYS D'ORIGINE DU DOCUMENT.

LES DEMANDES DE RENSEIGNEMENTS SUR LES POSSIBILITÉS D'OBTENIR L'ASSISTANCE JUDICIAIRE OU LA CONSULTATION JURIDIQUE DANS LE PAYS D'ORIGINE DU DOCUMENT PEUVENT ÊTRE ADRESSÉES :

Legal Services for New York City
350 Broadway
New York, New York  10013
U.S.A.
Tel. 1.212.431.7200

**IMPORTANT**

THE ENCLOSED DOCUMENT IS OF A LEGAL NATURE AND MAY AFFECT YOUR RIGHTS AND OBLIGATIONS.  THE "SUMMARY OF THE DOCUMENT TO BE SERVED" WILL GIVE YOU SOME INFORMATION ABOUT ITS NATURE AND PURPOSE.  YOU SHOULD, HOWEVER, READ THE DOCUMENT ITSELF CAREFULLY.  IT MAY BE NECESSARY TO SEEK LEGAL ADVICE.

IF YOUR FINANCIAL RESOURCES ARE INSUFFICIENT YOU SHOULD SEEK INFORMATION ON THE POSSIBILITY OF OBTAINING LEGAL AID OR ADVICE EITHER IN THE COUNTRY WHERE YOU LIVE OR IN THE COUNTRY WHERE THE DOCUMENT WAS ISSUED.

ENQUIRIES ABOUT THE AVAILABILITY OF LEGAL AID OR ADVICE IN THE COUNTRY WHERE THE DOCUMENT WAS ISSUED MAY BE DIRECTED TO:

Legal Services for New York City
350 Broadway
New York, New York  10013
U.S.A.
Tel. 1.212.431.7200

## SUMMARY OF THE DOCUMENT TO BE SERVED
*ELEMENTS ESSENTIELS DE L'ACTE*

Convention on the service abroad of judicial and extrajudicial documents in civil or commercial
matters, signed at The Hague, November 15, 1965.

*Convention relative à la signification et à la notification à l'étranger des actes judiciaires et extrajudiciares*
*en matière civile ou commerciale, signée à La Haye, le 15 Novembre 1965.*
**(article 5, fourth paragraph)**
*(article 5, alinéa 4)*

| | |
|---|---|
| Name and address of the requesting authority: | Karina J. Shreefer, Esq. |
| *Nom et adresse de l'autorité requérante :* | LEGAL LANGUAGE SERVICES |
| | 8014 State Line Road, Suite 110, Leawood, Kansas 66208, U.S.A. |
| | Tel. 1.913.341.3167 |

Particulars of the parties*:
*Identité des parties :*    UNITED STATES SECURITIES AND EXCHANGE COMMISSION, *Plaintiff*

   **SHANE BASHIR SUMAN** and MONIE RAHMAN, *Defendants*


### JUDICIAL DOCUMENT**
*ACTE JUDICIAIRE*

Nature and purpose of the document:
*Nature et objet de l'acte :*    To give notice to the Defendant of the commencement of a civil claim against him
   and to summon him to answer or otherwise respond.


Nature and purpose of the proceedings and, where appropriate, the amount in dispute:
*Nature et objet de l'instance, le cas échéant, le montant du litige :*    See Attachment "A."


Date and place for entering appearance**:
*Date et lieu de la comparution :*    Defendant is summoned and required to serve upon Plaintiff's Attorney (U.S. Securities and Exchange
   Commission) an Answer to the Complaint within twenty (20) days after service of the Summons, exclusive of the day of service. Any Answer
   the Defendant serves on the parties to this action must be filed within a reasonable period of time after service with the Clerk of the United
   States District Court, Southern District of New York located at: 500 Pearl Street, New York, New York 10007, U.S.A.
Court which has given judgment**:
*Juridiction qui a rendu la décision :*    N/A


Date of judgment**:
*Date de la décision :*    N/A

Time limits stated in the document**:
*Indication des délais figurant dans l'acte :*    Defendant is summoned and required to serve upon Plaintiff's Attorney (U.S. Securities and Exchange
   Commission) an Answer to the Complaint within twenty (20) days after service of the Summons, exclusive of the day of service. If Defendant
   fails to do so, judgment by default will be taken against him for the relief demanded in the Complaint. Any Answer the Defendant serves on
   the parties to this action must be filed with the Clerk of the Court within a reasonable period of time after service.

### EXTRAJUDICIAL DOCUMENT**
*ACTE EXTRAJUDICIAIRE*

Nature and purpose of the document:
*Nature et objet de l'acte :*    N/A


Time limits stated in the document**:
*Indication des délais figurant dans l'acte :*    N/A


---

\* If appropriate, identity and address of the person interested in the transmission of the document.
  *S'il y a lieu, identité et adresse de la personne intéressée à la transmission de l'acte.*
\*\* Delete if inappropriate.
  *Rayer les mentions inutiles.*

*U.S. Government Printing Office: 1990-262-211/15302

3

**Attachment "A"**
**to "Summary of the Document to be Served"**

Plaintiff United States Securities and Exchange Commission (the "Commission") brings this Complaint alleging fraudulent activity against Defendants Shane Bashir Suman and Monie Rahman, his wife.  The Commission alleges that Defendants traded in advance of the January 29, 2007 public announcement that MDS Inc. ("MDS") would commence a cash tender offer for Molecular Devices Corporation ("Molecular"). From approximately December 15, 2006 through January 28, 2007, Defendant Suman, in his capacity as an information technology specialist at MDS, had access to confidential corporate information, including access to critical e-mails related to the impending transaction between MDS and Molecular.  Defendants subsequently used the nonpublic information garnered from those e-mails to reap ill-gotten gains by trading in Molecular securities.  From January 24 through January 26, 2007, Defendants purchased 900 Molecular call options and 12,000 shares of Molecular common stock.  Following the public announcement on January 29, 2007, that MDS would purchase all of the outstanding shares of Molecular, the value of Molecular's stock rose sharply overnight.  As a result of their unlawful conduct, the Defendants jointly realized illegal profits exceeding $1,000,000.  Plaintiff asserts that unless enjoined, the Defendants will continue to engage in acts, practices, and courses of business similar to those alleged in this Complaint.

Plaintiff Commission alleges violations of the Securities Exchange Act of 1934, and illegal trading violations of the Exchange Act.

Plaintiff Commission requests the following relief:  judgment that Defendants violated the Federal Securities laws as alleged; permanent injunctive relief; disgorgement of ill-gotten gains resulting from the alleged illegal trading, with prejudgment interest; civil penalties; and such other relief as the Court may order.

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

| Southern | District of | New York |
|---|---|---|

U.S. Securities and Exchange Commission

**SUMMONS IN A CIVIL ACTION**

V.

Shane Bashir Suman and Monie Rahman

CASE NUMBER:

## 07 CV 6625

## Judge Pauley

TO: (Name and address of Defendant)

Shane Bashir Suman
71 Four Valley Drive
Concord, Ontario L4K 4V8

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Dean M. Conway
U.S. Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-4010

an answer to the complaint which is served on you with this summons, within _____20_____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

**J. MICHAEL McMAHON**

JUL 2 4 2007

CLERK

(By) DEPUTY CLERK

DATE

%AO 440 (Rev. 8/01) Summons in a Civil Action

| RETURN OF SERVICE | |
|---|---|
| Service of the Summons and complaint was made by me[1] | DATE |
| NAME OF SERVER (PRINT) | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

  Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

| STATEMENT OF SERVICE FEES | | |
|---|---|---|
| TRAVEL | SERVICES | TOTAL $0.00 |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____     _____
              Date                           *Signature of Server*


                                         _____
                                         *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

Judge Pauley

07 CV 6625

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————

UNITED STATES SECURITIES AND EXCHANGE
COMMISSION,

                    Plaintiff,

        v.

SHANE BASHIR SUMAN and
MONIE RAHMAN,

                    Defendants.

————————————————————

:
:
:
:
:
:
:
:
:
:
:
:

Case No.

RECEIVED
JUL 24 2007
U.S.D.C. S.D. N.Y.
CASHIERS

## COMPLAINT

Plaintiff United States Securities and Exchange Commission ("Commission")
alleges as follows:

## SUMMARY

1.      This is an insider trading case involving transactions in the securities of
Molecular Devices Corporation ("Molecular") by Shane Bashir Suman, formerly an
information technology specialist at MDS Inc. ("MDS"), and his wife, Monie Rahman.
Defendants Suman and Rahman traded in advance of the January 29, 2007 public
announcement (the Announcement") that MDS would commence a cash tender offer for
Molecular.  Under the terms of the tender agreement, MDS would pay $35.50 per share for
all outstanding common shares of Molecular.

2.      After the Announcement, Molecular's share price soared more than 46% to
$35.07 and the trading volume spiked 50-fold.

3.      From approximately December 15, 2006 through January 28, 2007, Suman,

in his capacity as an information technology specialist at MDS, had access to a vast amount of confidential corporate information. For example, Suman's position afforded him access to a large number of critical e-mails related to the impending transaction between MDS and Molecular, which were maintained on a secure website by MDS for due diligence purposes.

4.    Suman and Rahman subsequently used the material, nonpublic information garnered from those e-mails (and from other sources) to reap ill-gotten gains by trading in Molecular securities. From January 24 through January 26, 2007, Suman and Rahman purchased 900 Molecular call options and 12,000 shares of Molecular common stock in an account held by Rahman.

5.    As a result of their unlawful conduct, Suman and Rahman unjustly enriched themselves by more than one million dollars ($1,000,000).

6.    By virtue of their conduct, Suman and Rahman violated Sections 10(b) and 14(e) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b) and 78n(e)] and Rules 10b-5 [17 C.F.R. § 240.10b-5] and 14e-3 [17 C.F.R. § 240.14e-3] promulgated thereunder, and unless enjoined will continue to engage in acts, practices, and courses of business similar to those alleged in this Complaint.

## JURISDICTION AND VENUE

7.    This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa].

8.    Defendants Suman and Rahman made use of the means and instrumentalities of interstate commerce or of the mails in connection with the acts, practices, and courses of business alleged herein, certain of which occurred within the

Southern District of New York. Venue is proper in this District pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa].

## THE PARTIES

9. Defendant Monie Rahman ("Rahman"), age 36, is a Canadian citizen who has resided in North Logan, Utah since June 2006. Rahman has been married to Shane Bashir Suman since 2003.

10. Defendant Shane Bashir Suman ("Suman"), age 34, is a resident of Ontario, Canada and worked as an information technology specialist for MDS. Suman has been married to Monie Rahman since 2003.

## RELATED ENTITIES

11. Throughout its history, Molecular Devices Corporation was a Sunnyvale, California-based company that designed systems and software to accelerate the pace of drug development. Molecular's common stock was traded on the NASDAQ National Market system under the symbol "MDCC." Molecular stock options were listed and traded on the Chicago Board Options Exchange and the Philadelphia Stock Exchange.

12. MDS Inc. is a Toronto-based company whose stock is quoted jointly on the Toronto Stock Exchange and the New York Stock Exchange. MDS produces medical devices, which are used by pharmaceutical and biotechnology companies to research, diagnose and treat diseases.

## FACTUAL ALLEGATIONS

13. On November 7, 2006, Molecular entered into a confidentiality agreement with its corporate financial advisor, UBS Securities LLC ("UBS"), in connection with a potential business combination. Among other things, this agreement required that "[f]or

a period of 12 months from the date of th[e] Agreement, UBS w[ould] keep confidential any material nonpublic information" made available to UBS by Molecular.

14.    On November 22, 2006, UBS entered into its own confidentiality agreement with MDS in connection with its evaluation of MDS's possible tender offer for Molecular shares. The agreement with UBS required MDS to inform its employees that information concerning Molecular was confidential and should not be misused. Further, the agreement stated that "United States securities laws impose restrictions on trading in securities when in possession of [material nonpublic information]."

15.    On December 28, 2006, Suman signed an employee confidentiality pledge that stated that neither he nor his family members would use or disclose confidential information that he learned during the course of his employment at MDS. By signing this pledge, Suman assumed a fiduciary duty of trust and confidence to his employer MDS.

16.    During the relevant period, Suman's duties and responsibilities as an information technology specialist at MDS included administering and repairing the e-mail network for company employees. In order to carry out his duties, Suman was entrusted with, and had ready access to, nonpublic information concerning MDS's impending tender offer for Molecular.

17.    Specifically, Molecular created a secure website to collect and manage information regarding the tender offer. As part of this effort, Molecular generated an e-mail access list for employees involved in the potential business transaction. When new information was added to the secure website, a mass e-mail with the "from" line reading "Molecular Devices Corporation" was automatically generated and sent to everyone on the access list. The subject line on those e-mails read "Project Monument," the code

- 4 -

name for the pending transaction between MDS and Molecular. In the six weeks leading up to the Announcement, approximately 500 such e-mails were disseminated. As part of his responsibilities at MDS, Suman had access to this e-mail traffic.

18.    Also, MDS's e-mail system encountered a number of problems throughout December 2006 and January 2007. As an e-mail system administrator, Suman had access to the contents of many MDS employees' e-mail messages when he provided technical support. By virtue of his role as an information technology specialist for MDS, Suman had many opportunities to learn of the impending transaction between MDS and Molecular.

19.    For example, late in the morning of January 23, 2007, Suman was called to restore an electronic document titled "Andy Monument Message." The title referred to Andy Boorn, the president of an MDS subsidiary then known as MDS Sciex. This document was to be distributed to MDS employees after the Announcement in order to explain to them the significance and impact of the MDS-Molecular transaction. Although Suman was not able to retrieve the document, the MDS employee who had lost the document explained to Suman that the file was highly confidential and that, if he was able to find it, he was not allowed to read it.

20.    After attempting to locate the "Andy Monument Message" document, Suman shortly thereafter started to search the internet for information related to the MDS-Molecular transaction. The internet browser history on Suman's work computer revealed that in the early evening of January 23, 2007, Suman was running multiple internet searches for "Molecular Devices" and "Monument." He also logged onto www.monument-inc.com. The browser history further illustrated that Suman went back

- 5 -

and forth between searches focused on "Molecular" and those focused on "Monument." Suman also visited an internet message board devoted to Molecular Devices. Although that message board contained some speculation about a possible takeover of Molecular, MDS was not mentioned as a potential acquirer.

21.    On January 23, 2007 at 7:41 p.m. EST, Suman called Rahman and the two spoke for 100 minutes.

22.    On January 24, 2007, starting at 9:33 a.m. EST and continuing throughout that day, Rahman placed limit orders to purchase a total of 32,000 shares of Molecular stock in an account she held at E*Trade Canada Securities Corporation (the "E*Trade Account"). Ultimately, orders for only 12,000 Molecular shares were executed that day, at an average price of approximately $24 per share.

23.    From January 24 to January 26, 2007, Suman and Rahman bought 900 Molecular call options in the E*Trade Account. Each of these call options gave Suman and Rahman the right to purchase 100 Molecular shares, at an exercise price of $25.00, by expiration dates set in February, March and April of 2007. Thus, defendants' 900 Molecular call options gave them the right to purchase 90,000 shares of Molecular stock.

24.    Suman, who accessed the E*Trade Account from Canada, bought 870 of the 900 Molecular call options.

25.    Rahman, who accessed the E*Trade Account from Utah, bought 30 of the 900 Molecular call options.

26.    A portion of the Molecular securities purchases were financed with a margin loan of approximately $200,000.

27.    On the morning of January 29, 2007, MDS and Molecular publicly announced a $615 million tender offer pursuant to which MDS would purchase all of the outstanding shares of Molecular.

28.    News of the Announcement caused the value of Molecular's stock to rise sharply from a closing price of $23.88 on Friday, January 26, 2007 to a closing price of $35.07 on Monday, January 29, 2007.

29.    As a result of the transactions in Molecular securities described above, Suman and Rahman jointly realized illegal profits exceeding $1,000,000. Specifically, Suman's purchase of 870 Molecular call options resulted in ill-gotten gains of approximately $845,000. Rahman's purchase of 12,000 Molecular shares and 30 Molecular call options resulted in ill-gotten gains of approximately $160,000.

## FIRST CLAIM FOR RELIEF

### Violations of Section 10(b) of the Exchange Act
### [15 U.S.C. § 78j(b)] and Rule 10b–5 thereunder [17 C.F.R. §240.10b–5]

30.    Paragraphs 1 through 29 are re-alleged and incorporated herein by reference.

31.    Defendant Suman owed a fiduciary duty of trust and confidence to his employer MDS, which prohibited him from, among other things, using or disclosing material, nonpublic information learned during the scope of his employment.

32.    At all relevant times, Suman knew or was reckless in not knowing that the information concerning MDS's tender offer for Molecular shares was material, confidential, and nonpublic. In breach of a duty of trust and confidence that he owed to

- 7 -

MDS, and on the basis of this material, nonpublic information, Suman purchased Molecular call options.

33.     Suman further knew or was reckless in not knowing that the information concerning the transaction between MDS and Molecular that he learned during the scope of his employment was nonpublic and material at the time that he tipped his wife, defendant Rahman.

34.     By communicating the material, nonpublic information concerning the transaction between MDS and Molecular to his spouse Rahman, Suman made a gift of that information to her and in return he received a personal benefit.

35.     In communicating that material, nonpublic information under these circumstances to Rahman, Suman knowingly or recklessly breached a fiduciary or similar duty of trust and confidentiality that he owed to his employer MDS.

36.     Rahman also knew or should have known that the information about the MDS-Molecular transaction that she received from Suman had been communicated to her in breach of Suman's fiduciary duty of trust and confidence that he owed to his employer MDS. Rahman thus assumed the same duties that Suman owed to MDS. By purchasing Molecular shares and call options, Rahman also breached those duties.

37.     By the conduct described above, defendants Suman and Rahman directly or indirectly, violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## SECOND CLAIM FOR RELIEF

### Violations of Section 14(e) of the Exchange Act
### [15 U.S.C. § 78n(e)] and Rule 14e-3 thereunder [17 C.F.R. §240.14e-3]

38.    Paragraphs 1 through 37 are re-alleged and incorporated herein by reference.

39.    By November 22, 2006, MDS had taken a substantial step or steps to commence a cash tender offer to purchase the outstanding public shares of Molecular.

40.    Beginning on or about January 24, 2006, defendants Suman and Rahman engaged directly or indirectly in fraudulent, deceptive or manipulative acts or practices in connection with the tender offer for Molecular's stock by (i) purchasing or causing to be purchased the securities of Molecular while in possession of material, nonpublic information related to the tender offer, which information they knew, or were reckless in not knowing, was obtained directly or indirectly from the companies involved in the transactions or a person acting on behalf of one or more of the companies; or (ii) communicating to others material nonpublic information relating to the tender offer for Molecular's stock, under circumstances in which it was reasonably foreseeable that such communications were likely to result in the purchase or sale of the securities of Molecular.

41.    By reason of the foregoing, Suman and Rahman directly and indirectly, violated Section 14(e) of the Exchange Act [15 U.S.C. § 78n(e)] and Rule 14e-3 thereunder [17 C.F.R. § 240.14e-3].

### RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that the Court:

(A)    Enter judgment in favor of the Commission finding that defendants Suman

and Rahman each violated the federal securities laws and the rules promulgated

thereunder as alleged herein;

(B)    Permanently enjoin defendants Suman and Rahman from violating

Sections 10(b) and 14(e) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78n(e)] and Rules

10b-5 and 14e-3 [17 C.F.R. §§ 240.10b-5 and 240.14e-3] thereunder;

(B)    Order defendants Suman and Rahman to jointly and severally disgorge all

ill-gotten gains, including prejudgment interest thereon, resulting from the illegal trading

alleged herein;

(C)    Order defendants Suman and Rahman to each pay a civil monetary penalty

pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1]; and

(D)    Grant such other relief as this Court deems just and proper.

Dated: July 24, 2007                    Respectfully submitted,

Dean M. Conway (Lead Counsel)
*Assistant Chief Litigation Counsel*
Richard E. Simpson, RS-5859
*Assistant Chief Litigation Counsel*
U.S. Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549-4010
Telephone: (202) 551-4412 (Conway)
Facsimile: (202) 772-9246 (Conway)
conwayd@sec.gov

Counsel for Plaintiff

Of Counsel:
Cheryl Scarboro, *Associate Director,*
  *Division of Enforcement*
John Reed Stark, *Chief,*
  *Office of Internet Enforcement*
Thomas A. Sporkin, *Deputy Chief*
  *Office of Internet Enforcement*
David Smyth
  *Senior Counsel*